CARIBBEAN CASUALTY COMPANY, Plaintiff and Appellant, v. JUAN G. GALLARDO, TREASURER OF PORTO RICO, Defendant and Appellee; CARIBBEAN CASUALTY COMPANY, Plaintiff and Appellant, v. JUAN G. GALLARDO, TREASURER OF PORTO RICO, Defendant and Appellee.

Nos. 4603 and 4703.   Argued June 6, 1929.—Decided March 5, 1930.

Jaime Sifre Jr., Horacio Franceschi and Diego O. Marrero, for appellant.  James R. Beverley, Attorney General and Ricardo A. Gómez, Assistant Attorney General, for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

We shall consider in a single opinion herein the two appeals taken, respectively, from a judgment rendered by the

lower court on December 17, 1927, for the defendant, and from an order of the same court dated March 26, 1928, refusing a new trial requested by plaintiff in the action.

It is alleged in the complaint that the plaintiff is a corporation organized under the laws of Porto Rico; that in or about the middle of 1924 the Insular Treasurer prepared an assessment schedule and included therein as taxable property belonging to the plaintiff the following: ''Cash on hand, $15,160; Franchises, $2,150; Property completing the capital, $228,020''; that, in accordance with the return, the treasurer notified the plaintiff that he had assessed on the latter a tax amounting to $5,127.40 for the year 1924–1925; that thereupon the plaintiff took an appeal to the Board of Equalization and Review, which affirmed the treasurer's assessment, and that payment of the tax so assessed having been demanded from the plaintiff, the latter willingly paid $863.98, which it deemed just, and the balance, or $4,263.45, under protest. Up to this point the allegations of the complaint are admitted by the defendant.

The plaintiff further alleged that its capital consists of: ''1950 shares of stock in Yabucoa Sugar Co. having a market value of $70 each, or $136,500; 900 shares in Banco Territorial y Agrícola de Puerto Rico at $81 each, $72,900; 10 shares in Compañía Azucarera del Toa at $85 each, $850; 45 shares in Central Cambalache at $650 each, $29,150; 700 shares in Central Pasto Viejo, Inc., at $15 each, $10,500; Total, $250,000''; that the tax assessed is illegal, arbitrary and unjust in that it was assessed on its capital consisting mainly of shares in other domestic corporations already assessed and on which the original corresponding tax had been levied; that the plaintiff is protected by the provisions of section 291 and 320 of the Political Code; that the tax assessed to it is a double tax and that its only property subject to taxation amounts to $41,337.32 and consists of cash on hand, $39,187.20, and fixtures valued at $2,150.

The latter allegations were denied by the defendant, who

maintains the legality of the tax levied on the ground that it was assessed on the basis of the capital stock and the undivided surplus of the plaintiff and not on shares in other domestic corporations already assessed and upon which any tax had been paid.

The case went to trial. The treasurer of the plaintiff corporation testified that the tax was paid in accordance with the distribution made by the Treasurer of Porto Rico, as follows: capital stock, $200,000, and surplus, $43,330; that the corporation had on January 15, 1924 "a capital stock amounting to two hundred thousand dollars"; that "that is the capital in which the capital stock is invested. I desire to explain, because here there is a surplus of $50,000, which is a paid-up surplus; the shares of stock were paid at the rate of $125, instead of $100, in order to create a surplus so as to better comply with the Insurance Act, a surplus of $50,000, and on the said date it would not be that amount because a a liquidation would show a small decrease in the surplus. The assets represent that same capital. The corporation had 1950 shares in Yabucoa Sugar Co., 900 in Banco Territorial y Agrícola, 10 in Compañía Azucarera del Toa, 45 in Central Cambalache and 700 in Central Pasto Viejo, Inc., to which a valuation was given, in accordance with the market on that date, equal to the amount of the capital and surplus, that is $250,000"; that "the Insurance Act of Porto Rico requires that all insurance companies invest their capital in certain securities which are specified in the act. In making such an investment the Superintendent of Insurance, who is at the same time Treasurer of Porto Rico, was consulted, and the latter fixed on that date a market value to those shares, which he approved, after making the proper inquiries; and this was done in order to comply with the requirement of the Insurance Act that the corporation have its capital invested in certain securities specified by the Act, and the investment was made"; that "the Caribbean Casualty Co. apparently did not file the schedule and the Treasury prepared it."

J. Martínez Chapel, corporation assessor in the Treasury of Porto Rico, testified as follows:

"Q.—Showing him the notice of assessment, can the witness tell us what is the basis of the assessment for that year? A.—The basis of capital and surplus. Q.—Capital stock? A.—Yes, sir, which is in shares of stock and the surplus. Q.—In making that assessment, has the property, in which the capital of the corporation was invested, been taken into consideration? A.—Undoubtedly not. Account was taken of the value of the shares of stock and the surplus, the undivided profits of the corporation during that year, all aggregating a valuation of $245,330. Q.—Has account been taken of the investment which that capital and surplus represent? A.—Yes, sir."

The plaintiff further introduced in evidence certain certificates showing that Yabucoa Sugar Co., Banco Territorial y Agrícola, Compañía Azucarera del Toa, Central Cambalache and Central Pasto Viejo, Inc., were all domestic corporations and that they were assessed for taxation purposes: the bank "on the basis of its capital amounting to $1,305,650, distributed as follows: capital stock, $1,200,000; surplus, $100,000 and undivided profits, $5,650"; Yabucoa Sugar Co. "on the basis of its property amounting to $2,209,680"; the Toa Sugar Company, "on the basis of its property, amounting to $1,572,790"; Central Cambalache "on the basis of its capital amounting to $2,782,970 distributed as follows: capital stock $2,160,000, bonds $327,400, surplus $280,000, and undivided profits $15,570", and Central Pasto Viejo "on the basis of its property amounting to $1,700,780."

After the case was thus submitted, the district court rendered a judgment for the defendant on December 17, 1927. We think it advisable to reproduce here the following excerpts from the opinion which formed the basis for that judgment:

"It appears that in this case the tax was levied upon the basis of the capital stock and undivided surplus, and although the evidence of the plaintiff shows that the domestic corporations and concerns in which the plaintiff holds stock to an aggregate value of $250,000 were assessed for taxation purposes for the fiscal year 1924–1925, it has not been specifically shown that the said shares of stock were

assessed to them, nor can the court infer this from the fact that the said corporations and concerns were assessed, some on the basis of the property and others on the basis of their capital. See Porto Rican & American Insurance Co. v. Gallardo, 37 P.R.R. 108.

"On the other hand, section 320 of the Political Code, cited by the plaintiff, specifically provides that all the shares of stock in banks and banking institutions shall be assessed to the owners thereof, and only in the event that the latter should fail to pay such tax is the bank responsible. It has not been shown that Banco Territorial y Agrícola has paid for the plaintiff."

At this stage of the case, on February 7, 1928, the plaintiff moved for a new trial on the ground of newly discovered evidence, which consisted of certain certificates issued by the Treasury of Porto Rico attesting that the said bank and the above-mentioned corporations had paid their taxes for 1924–1925, "either on the basis of the value of their property or on the basis of the capital invested in shares of stock, plus the undivided profits."

The court refused a new trial for the reason that it had not been shown that those certificates could not have been obtained prior to the trial by the exercise of due diligence; and, further, because "the evidence which is said to have been newly discovered, that is, the certificates lately issued, could not change the result of the trial, as it was necessary that they should contain the assertion that the corporations mentioned therein were subject to payment of the tax levied upon such shares of stock; or that there should have been introduced at the trial the tax returns filed by the said corporations and the notices of assessment for taxation purposes, in order to determine whether or not a tax had been levied and collected upon the shares owned by the plaintiff."

We have examined the motion for a new trial as well as the affidavits upon which it is based and the certificates attached thereto, and we think that the district court properly exercised its discretion in denying the motion. Aside from certain exceptions which do not apply in the present case, the first ground, namely, that the said certificates did not show

that newly discovered evidence was really involved, would have been sufficient to deny the motion; but we agree that the second ground for the refusal also exists. The fact that the tax referred to in the original certificates had been levied and paid, does not alter the legal question to be decided. Neither the certificates originally introduced, nor those attached to the motion for a new trial, specifically show that the tax had been paid on the shares in which the plaintiff corporation had invested almost its entire capital.

That being so, we agree with the trial judge that the case is controlled by the principles laid down by this court in *Porto Rican & American Ins. Co.* v. *Gallardo, Treasurer,* 37 P.R.R. 108, which was a decision rendered on a motion for rehearing.

None of the shares of stock in which the plaintiff has its capital invested is exempt from taxation by operation of law, as, for instance, is the case with liberty bonds. The centrals which issued such shares were assessed and paid their tax on the basis of their property, lands, machineries, buildings, etc. They sold their stock in the market to raise money and invested the funds so obtained. The plaintiff purchased the said shares in the market seeking to invest, in its turn, its own capital, and it is because of that capital so invested— which enables the plaintiff to meet its obligations and which is at the same time a source of production—that the tax is assessed to it.

The case of the shares in Banco Territorial is not different from that of the shares in the centrals. All that the certificates show is that the Bank was assessed for the purposes of the property tax "on the basis of its capital, as follows: capital stock $1,200,000, surplus $11,000, and undivided profits, $4,650", and that "it paid the property tax which was imposed to it." No further details appear.

The judgment and the order appealed from must be affirmed.